# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION
# CASE NO.: 3:10-CV-00508-TBR

**GENSCRIPT CORPORATION and**
**YUN YANG**                                                            **PLAINTIFF**

**v.**

**AA PEPTIDES, LLC a/k/a AAPPTECT,**
**a/k/a AAPPTec, a/k/a ADVANCED AUTOMATED**
**PEPTIDE PROTEIN TECHNOLOGIES a/k/a**
**APPTECH, a/k/a AAPPTECH**                                          **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendant's Motion to Dismiss or to Transfer based on Forum Non Conveniens (DN 7). Plaintiffs have filed a response (DN 9). Defendant has filed a reply (DN 10). This matter is now ripe for adjudication. For the following reasons, Defendant's motion is DENIED.

## BACKGROUND

The Defendant ("AA Peptides") designs, manufactures, constructs and sells peptide synthesizers, including the Apex 396 DC FW-S ("Apex 396" model. Plaintiff GenScript Corporation ("GenScript") receives orders for manufactured products, including peptides, from customers globally. Nanjing Jinsite ("Jinsite"), who is not a party to this action, manufactures these products for GenScript. Jinsite does not receive any orders itself and is located in the People's Republic of China. At the time of the actions at issue in this case, Jinsite was a wholly owned subsidiary of GenScript. However, at this time GenScript and Jinsite are affiliated, sharing the same parent company. Frank Zhang is the Chief Executive Officer of both Jinsite and GenScript and both corporations share the same board of directors.

On or about August 17, 2007, GenScript ordered and purchased an Apex 396 peptide

synthesizer from AA Peptides. Jinsite had no role in negotiating the purchase of the Apex 396 machine and owed no obligations under the contract. The Apex 396 was shipped from AA Peptides to Jinsite's office in China in August 2007. In October 2007, the Apex 396 was installed. Jinsite's employees were also trained in the use of the Apex 396. After installation, the Apex 396 malfunctioned. After attempting to repair the machine, it was replaced in October 2008.

On or about December 18, 2008, while plaintiff Yun Yang ("Yang") was operating the Apex 396, the machine suddenly exploded. Yang suffered physical injury to her hands, fingers and face due to the explosion. Yang was an employee of Jinsite and was acting the course and scope of her employment at the time of her injury. After July 2008, Yang was the only person who was responsible for maintaining and operating the Apex 396 machines, including the one which exploded.

GenScript and Yang filed this action on August 31, 2009, in the District of New Jersey. GenScript alleges a breach of warranty action in Count I of the Complaint. In Count II and III of the Complaint, Yang alleges a claim of product liability and a claim of negligence.

In December 2009, AA Peptides filed the present motion seeking dismissal of the action for failure to name an indispensable party and, in the alternative, to dismiss for failure to state a claim upon which relief can be granted. That motion also sought to transfer this action to the Western District of Kentucky on the basis of forum non conveniens. The court in the District of New Jersey granted AA Peptides' motion to transfer the case and the case was transferred to this Court on July 22, 2010. The motion to dismiss for failure to join an indispensable party or, in the alternative, for failure to state a claim remains before this Court.

**DISCUSSION**

**I. Indispensable Party**

AA Peptides argues Jinsite is an indispensable party. Federal Rule of Civil Procedure 19 "establishes guidelines for determining when it is proper to dismiss a case because a person or entity has an interest in the outcome of the litigation that could be impaired in the absence of that person or entity, but joinder of the person or entity will deprive the court of subject matter jurisdiction." *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 664 (6th Cir. 2004). Rule 19 should be applied pragmatically because "the essence" of the rule "is to balance the rights of all those whose interests are involved in the action." *Id.* at 665 (citation and internal quotations omitted).

"Assessing whether joinder is proper under Rule 19 is a three-step process. First, the court must determine whether the person or entity is a necessary party under Rule 19(a)." *Id.* at 666 (internal citations omitted). Rule 19(a) provides:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). Second, if the party is a necessary party, the court must determine whether the necessary party can be joined, i.e., is joinder feasible? *See Glancy*, 373 F.3d at 666 (citing *W. Md. Ry. Co. v. Harbor Ins. Co.*, 910 F.2d 960, 961 (D.C. Cir. 1990) (Thomas, J.) ("If the absentee should be joined, can the absentee be joined?"); 4 JAMES WM. MOORE ET AL., MOORE'S FEDERAL

PRACTICE § 19.02[3][b] ("If the absentee is necessary ... the next question is whether joinder of the absentee is feasible.")). "Third, if joinder is not feasible . . . the court must analyze the Rule 19(b) factors to determine whether the court should 'in equity and good conscience' dismiss the case because the absentee is indispensable." *Id.* (quoting Fed. R. Civ. P. 19(b)). The Rule 19(b) factors include:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
>> (A) protective provisions in the judgment;
>>
>> (B) shaping the relief; or
>>
>> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

"Thus, a person or entity 'is only indispensable, within the meaning of Rule 19, if (1) it is necessary, (2) its joinder cannot be effected, and (3) the court determines that it will dismiss the pending case rather than proceed in the case without the absentee.'" *Glancy*, 373 F.3d at 666 (citation omitted).

First, the Court must determine if Jinsite is an indispensable party pursuant to Rule 19(a). AA Peptides argues that Jinsite is indispensable because complete relief cannot be accorded among the existing parties and Jinsite has an interest in the action which would subject AA Peptides to a substantial risk of incurring multiple or otherwise inconsistent obligations

4

AA Peptides first argues complete relief cannot be accorded among the existing parties. AA Peptides appears to argue complete relief cannot be accorded because it may still be subject to a later suit for damages by Jinsite. However, several circuits have found that the rule was not intended to apply to the possibility of future litigation but only to relief between the current parties. *See* 4 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 19.03[2][b][ii] (citing in part *Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 705 (3d Cir. 1996) ("Completeness is determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought." (citing *Sindia Expedition, Inc. v. Wrecked and Abandoned Vessel*, 895 F.2d 116, 121 (3d Cir. 1990)); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 209 (2d Cir. 1985); *United States v. County of Arlington*, 669 F.2d 925, 929 (4th Cir. 1982); *Eldredge v. Carpenters 46 N. Cal. Counties Joint Apprenticeship & Training Comm.*, 662 F.2d 534, 537 (9th Cir. 1981)). Furthermore, the nature of the relief requested in this case, i.e., payment of damages, does not necessitate the addition of, or effect the interest of Jinsite. The Court finds it may afford complete relief between the extant parties; therefore, Jinsite is not indispensable under this part of Rule 19(a).

Next, AA Peptides argues that it would be subject to substantial risk of multiple obligations because Jinsite could later bring suit against it asserting damages resulting from the same accident. However, this part of the rule compels joinder only to avoid inconsistent obligations, not inconsistent adjudication. 4 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 19.03[4][d] (citing in part *Bedel v. Thompson*, 103 F.R.D. 78, 81 (S.D. Ohio 1984)). Moore's explains:

> Sequential claims for damages do not inflict the relevant harm. Consider a mass tort, in which several plaintiffs may sue serially. One plaintiff may lose, and yet a later plaintiff may win on precisely the same theory. Although the results are inconsistent, the defendant's obligations are not. Put simply, having to write a check to one

5

> claimant and not to another is not the sort of inconsistent obligation the clause addresses.
>
> Moreover, joint tortfeasors are not necessary parties. Thus, the possibility that, in the absence of a joint tortfeasor, a defendant may be liable in the original action and lose a subsequent action for contribution against the joint tortfeasor is not the kind of inconsistency contemplated by the "multiple liability" clause.

*Id.* (internal citations omitted). AA Peptides asserts it would be subject to substantial risk of a subsequent action by Jinsite for damages; however, as stated, this is not the type of inconsistent obligation that is contemplated by the rule. The Court concludes Jinsite is not an indispensable party.

**II. Failure to State a Claim**

In addition to arguing that Jinsite is an indispensable party, AA Peptides argues that GenScript has failed to state a claim for damages. AA Peptides argues that because the machine in question was shipped to Jinsite and Jinsite used, controlled an operated the machine the damages for "consequential direct loss," "indirect loss," wasted materials and lost time are Jinsite's alleged damges, not GenScript's.

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). The "[f]actual allegations in the complaint must be enough to raise a right to relief above the speculative level on the assumption that

all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted). A plaintiff must allege sufficient factual allegations to give the defendant fair notice concerning the nature of the claim and the grounds upon which it rests. *Id.*

Furthermore, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A court is not bound to accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949.

The Court finds GenScript has sufficiently alleged, at this stage of litigation, that the damages suffered were those of GenScript, not Jinsite, and such damages are plausible. In paragraph 48 of the Complaint, GenScript alleges that it was forced to cancel and delay peptide orders and suffered damages resulting from those cancellations and delays in the amount of $1,706,676.00. In paragraph 49, GenScript alleges raw materials were destroyed resulting in $25,900.00 of damage. In paragraph 50, GenScript alleges it suffered a loss of $4,412.00 of investment in personnel and time to use and operate the Apex 396 machine. These allegations are sufficient to make it plausible that GenScript sustained damages and that a claim for damages plausible.

**CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED Defendant's motion is DENIED.